IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FARRELL J. BOUCK,<br><br>        Plaintiff,<br><br><br>vs.<br><br><br>UTAH DEPARTMENT OF<br>TRANSPORTATION,<br>        Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:04-CV-554 TC |

Farrell Bouck is a former employee (engineering technician) of the Utah Department of Transportation (UDOT). He claims that UDOT, in violation of Title VII of the Civil Rights Act, terminated his employment because he filed an affidavit in support of a co-worker's national origin discrimination claim against UDOT. He also claims that he is mentally disabled and that UDOT violated the ADA and the Rehabilitation Act of 1973 by failing to accommodate his disability. Underlying both of Bouck's claims (retaliation and disability discrimination) is the assertion that UDOT created a hostile environment that resulted in constructive discharge.

UDOT has filed a motion for summary judgment. UDOT asserts that Bouck cannot establish a prima facie case of retaliation because there is no evidence that his supervisors knew at the relevant times that Bouck filed an affidavit in support of co-worker Saiid Jirsa's discrimination claim. As for Bouck's disability claims, UDOT contends that Bouck's ADA claim (brought under ADA Title I, 42 U.S.C. §§ 12112 and 12117) is barred by the Eleventh

Amendment.  Alternatively, UDOT asserts that Bouck is not disabled and is not a "qualified individual."

The court finds that Bouck is not disabled and is not a qualified individual under the Rehabilitation Act.  Further, the court finds that Bouck has not rebutted UDOT's reasons for Bouck's discharge from employment and so UDOT is entitled to summary judgment on Bouck's Title VII retaliation claim.  Accordingly, UDOT's Motion for Summary Judgment is GRANTED.

UDOT has also filed a Motion to Strike Affidavit of Saiid Jirsa.  UDOT's Motion to Strike is DENIED AS MOOT.

## I.    FACTUAL BACKGROUND

In the fall of 2001, Bouck began having conflicts with his new supervisor, Hugh Boyle. In August 2002, Bouck filed an affidavit in support of a discrimination claim filed by Bouck's friend and co-worker, Saiid Jirsa.  Alan Lake, the director of UDOT's human resources department, received a copy of the affidavit.  But Lake did not disclose the existence or the contents of the affidavit to any of Bouck's supervisors.  Bouck's three supervisors were Boyle,[1] Boyd Wheeler,[2] and Dave Nazare.[3]  In the meantime, Bouck continued to have conflicts at work (he alleges that he received especially harsh treatment from Boyle after he filed the supporting affidavit), and he suffered from anxiety, panic attacks, depression, and insomnia.

Apparently Bouck's psychological disorders (aggravated by Boyle's harsh treatment of

---

[1]Boyle, a team leader, was Bouck's first level (that is, primary) supervisor.

[2]Wheeler was Bouck's second level supervisor.

[3]Nazare, Chief of the Structures Division where Bouck worked, was Bouck's third level supervisor.

him) prevented him from doing his job.  On June 27, 2003, Bouck took extended sick leave.  In July 2003, Bouck filed a grievance with the Career Service Review Board.  That was the first time Bouck's supervisors learned of the existence and contents of the affidavit.[4]

On September 1, 2003, Bouck was placed on long-term disability leave (he was still a UDOT employee although he had not actually worked since June 27, 2003).  In February 2004, UDOT notified Bouck of a one-year limitation on his long-term disability leave, which required that he return to work by June 26, 2004, to avoid being released from employment.  See Utah Admin. Code R477-7-17(3).  Bouck did not return to work.  In May 2004, UDOT once again reminded Bouck of the one-year limitation.  But Bouck still did not return to work.

Instead, he requested an accommodation from UDOT.  He asked that UDOT either transfer him to another division or extend the one-year limitation under the policy exception to the administrative rule.  UDOT denied Bouck's request.  And, after a meeting between Bouck, Bouck's attorney, HR director Lake, and Jim McMinimee (UDOT Director of Project Development), McMinimee sent a recommendation to John Njord, UDOT Executive Director, that Bouck's employment be terminated.  Njord, the only individual at UDOT authorized to make decisions regarding a career service employee's status, terminated Bouck's employment, effective August 13, 2004.  In the meantime, Bouck applied for, and received, long-term disability benefits.

---

[4]As described in more detail later in this Order, Bouck unsuccessfully attempts to create a genuine dispute of material fact regarding the issue of whether his supervisors knew of the affidavit at the time they allegedly created a hostile work environment.

III.    **UDOT'S MOTION FOR SUMMARY JUDGMENT**

In its Motion for Summary Judgment, UDOT challenges both the legal and the factual

validity of Bouck's two claims: retaliation and disability discrimination claim.  Federal Rule of

Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.'" Fed. R. Civ. P. 56(c);  see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-

23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart

Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  Although UDOT bears the burden of

demonstrating that there are no issues of material fact, Bouck must set forth specific facts to

establish that there is a genuine issue for trial.  Celotex, 477 U.S. at 325.  "An issue of material

fact is 'genuine' if a 'reasonably jury could return a verdict for the nonmoving party.'" Universal

Money Ctrs., Inc. v. AT&T Co., 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must "examine the factual record and

[make] reasonable inferences therefrom in the light most favorable to the party opposing

summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238,

1241 (10th Cir. 1990).

A.    **Bouck's Retaliation Claim**

Bouck brings his retaliation claim under Title VII of the Civil Rights Act, 42 U.S.C.

§ 2000e-3(a), which reads, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate
> against any of his employees . . . because [the employee] has opposed any practice
> made an unlawful employment practice by this subchapter, or because [the

4

employee] has made a charge, testified, assisted, or participated in any manner in
an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation, Bouck "must demonstrate (1) that he engaged in

protected opposition to discrimination, (2) that a reasonable employee would have found the

challenged action materially adverse, and (3) that a causal connection existed between the

protected activity and the materially adverse action." Argo v. Blue Cross & Blue Shield of

Kansas, Inc., 452 F.3d 1193, 1202 (10th Cir. 2006) (citing the recent United States Supreme

Court decision in Burlington N. & Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S. Ct. 2405,

2414-15 (2006).  If Bouck establishes a prima facie case, then the burden shifts to UDOT to

articulate a legitimate, nondiscriminatory reason for the discharge.  See McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 800-07 (1973) (holding that when plaintiff relies on circumstantial

evidence to demonstrate employment discrimination, and plaintiff establishes prima facie case,

burden of production shifts to defendant to articulate legitimate, nondiscriminatory reason for

adverse action);  Argo, 452 F.3d at 1202 (applying McDonnell Douglas burden shifting

framework in Title VII retaliation case).  Then, if UDOT meets its burden of production, Bouck,

in order to survive summary judgment, must present evidence that UDOT's proffered reason was

pretext for a retaliatory motive.  McDonnell Douglas, 411 U.S. at 800-07.

> To show pretext, Mr. [Bouck] must produce evidence of "such weaknesses,
> implausibilities, inconsistencies, incoherencies, or contradictions in the
> employer's proffered legitimate reasons for its action that a reasonable factfinder
> could rationally find them unworthy of credence and hence infer that the employer
> did not act for the asserted non-discriminatory reasons."

Argo, 452 F.3d at 1203 (internal citations omitted) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319,

1323 (10th Cir. 1997)).

Bouck asserts that UDOT's adverse action consisted of creating a hostile work environment right after he filed his affidavit and that the hostile work environment resulted in constructive discharge. Specifically, he contends that the hostile supervisory environment allegedly created by Boyle, Wheeler, and Nazare caused him to take an extended leave of absence which, by default, resulted in loss of his job.

UDOT does not dispute, for purposes of its motion, that Bouck's filing of the affidavit in support of co-worker Saiid Jirsa's discrimination claim was a protected activity and that the alleged hostile work environment purportedly resulting in discharge from employment would constitute a materially adverse action. Rather, UDOT focuses on the third prong, contending that there is no evidence of a causal connection between the protected activity (Bouck's filing of the affidavit) and the materially adverse action (Bouck's discharge from employment). "[A] causal connection is established where the plaintiff presents 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" MacKenzie v. City & County of Denver, 414 F.3d 1266, 1279 (10th Cir. 2005) (internal citation omitted) (quoting Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1320)). But to establish a causal connection, Bouck must show that the person who took the adverse action against Bouck knew at the time of the adverse action that Bouck filed the affidavit. Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993). The evidence strongly suggests that Bouck's direct supervisors did not know of the affidavit at the time the alleged hostile environment began and so there would be no causal connection.

But even assuming that Bouck has established a prima facie case (for example, by presenting evidence of temporal proximity of supervisors' harsh treatment of Bouck to Bouck's

filing of the affidavit),[5] UDOT presents a legitimate reason for Bouck's discharge.  UDOT

asserts that it discharged Bouck from employment because Utah Administrative Rule 477-7

provides that "[i]f an employee [on long term disability leave] is unable to return to work within

one year after the last day worked, the employee shall be separated from state employment."

Utah Admin. Rule 477-7-17(3)(c) (2005).[6]  And UDOT kept Bouck's job position open for

longer than one year (he was granted extended leave from June 27, 2003, to August 13, 2004).

Given UDOT's proffer of a legitimate reason, the burden shifted back to Bouck under

McDonnell Douglas to present evidence that his former supervisors are lying about their

knowledge and that UDOT's reason for terminating his employment (that the one-year extended

leave period had expired) was pretext for retaliation.  As noted above, to show pretext, Bouck

> must produce evidence of "such weaknesses, implausibilities, inconsistencies,
> incoherencies, or contradictions in the employer's proffered legitimate reasons for
> its action that a reasonable factfinder could rationally find them unworthy of
> credence and hence infer that the employer did not act for the asserted non-
> discriminatory reasons."

Argo, 452 F.3d at 1203 (internal citations omitted) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319,

1323 (10th Cir. 1997)).  He has not met his burden.

Bouck contends that UDOT's reason is pretext because (1) the individuals who allegedly

---

[5]See, e.g., Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d 1193, 1202 (10th
Cir. 2006) (holding that "close temporal proximity" between protected activity and adverse
action was "sufficient to allow an inference that a causal connection existed").

[6]Bouck points to the "Policy Exceptions" provision of Utah Administrative Rule 477-7,
suggesting that UDOT should have pursued a policy exception on his behalf.  The exception
provides that "[t]he Executive Director [of Utah's Department of Human Resources
Management] may authorize exceptions to the provisions of this rule consistent with [fair
employment practices set forth in Utah Admin. Rule] R477-2-3(1)."  Utah Admin. Rule 477-7-19
(2005).  Bouck does not cite to anything that required UDOT to pursue this discretionary policy
exception.

7

harassed him, who refused his accommodation request for re-assignment or extension of leave, and who actually terminated his employment after expiration of the one-year leave period knew about the affidavit he filed in support of Jirsa; (2) UDOT unreasonably denied his request to transfer to another department or change his supervisor; and (3) UDOT unreasonably denied his request for an indeterminate extension of the one-year leave period when UDOT had the discretion to request an exception to the administrative rule.  None of Bouck's proffered reasons would allow a reasonable jury to find UDOT's explanation unworthy of credence.

First, there is no evidence that his direct supervisors (principally Boyle, but also Wheeler and Nazare) knew of the affidavit at the time Bouck suffered from the allegedly hostile work environment.  The sworn deposition and affidavit testimony supports the conclusion that Alan Lake did not disclose the existence or contents of the affidavit to any of Bouck's supervisors. Similarly, the sworn deposition and affidavit testimony supports the conclusion that Boyle, Wheeler, and Nazare had no knowledge of the affidavit until after Bouck had worked his last day at UDOT (that is, after the allegedly hostile work environment had been created).  Yet Bouck suggests that a jury could reasonably infer that

> Alan Lake would have conveyed the fact of Mr. Bouck's support to Agency in-house attorney Jim Beadles. . . . It is also reasonable to infer that Mr. Beadles would have discussed the same with Mr. Nazare, Mr. Wheeler and Mr. Boyle. Note the lack of any Affidavit from Mr. Beadles or a Mr. J.D. Reynolds, UDOT attorney at Attorney General's office.

(Pl.'s Opp'n Mem. at 10.)  Bouck also says that a jury reasonably could infer that Jirsa's co-workers who had knowledge of the affidavit communicated such information to Bouck's supervisors.  But Bouck does not present evidence to support these inferences.  Bouck relies solely on the affidavit testimony of Saiid Jirsa to rebut the express denials of Bouck's

supervisors.  Specifically, Bouck relies on Jirsa's statement that Jirsa

> asked three other UDOT employees, Stephen Peterson, Vida Becklou and Kwan
> Po Lee, for affidavits [of support].  I shared with these three employees that
> Farrell Bouck, Biao [Chang] and Clair [Nelson] had provided affidavits to me.
> My impression was that these three employees are very talkative.  They would
> often act as conduits for information from employees to management and from
> management to employees.

(Revised Aff. of Saiid Jirsa ¶ 17, attached to Dkt # 31.)  Based on Jirsa's unsupported inference

about purported office gossip, Bouck leaps to the conclusion that his supervisors did know about

Bouck's filing of the supporting affidavit and consequently retaliated.  Bouck's conclusion is

simply not reasonable.  He has not presented reliable evidence creating a genuine dispute about

the timing of Bouck's supervisors' knowledge of the affidavit.  See Argo v. Blue Cross & Blue

Shield, 452 F.3d 1193, 1200 (10th Cir. 2006) ("[A]t the summary judgment stage, 'statements of

mere belief' in an affidavit must be disregarded.");  MacKenzie v. City and County of Denver,

414 F.3d 1266, 1273 (10th Cir. 2005) ("Unsupported conclusory allegations . . . do not create an

issue of fact.").  In short, nothing in the record presents any genuine dispute concerning the

sworn testimony of Lake, Boyle, Wheeler, and Nazare.  All Bouck presents is speculation.  His

immediate supervisors said they did not know about the affidavit, and there is no evidence from

Bouck to the contrary.

      As for McMinimee, who handled Bouck's requests for transfer or extension of leave, and

Njord, who made the decision to terminate Bouck's employment, their knowledge of Bouck's

affidavit does not create a reasonable inference that their motives were retaliatory.  Bouck filed

the affidavit in August 2002, approximately two years before either McMinimee or Njord acted.

Given the length of time during which these events occurred, Bouck's contention that "Mr.

Nazare, Mr. Wheeler and Mr. Boyle, including Mr. McMinimee, in tandem, pursued a variety of strategies which orchestrated Mr. Bouck out of UDOT involuntarily" (Pl.'s Opp'n Mem. at 17) is simply not reasonable.  See, e.g., MacKenzie, 414 F.3d at 1279-80 (holding, in summary judgment context, that evidence of protected activity occurring five months before alleged retaliatory conduct was insufficient, standing alone, to establish causation).

As for UDOT's denial of Bouck's request for a transfer or extension of leave, no admissible evidence contradicts UDOT's assertion that UDOT reviewed Bouck's requests and "found them impractical" for valid reasons.  (UDOT's Mem. in Support at 17 (citing Aug. 4, 2004 Letter of Jim McMinimee) (noting that UDOT did not have any available positions at that time that would fit Bouck's skills, interests and abilities, and noting that extension of leave would not be granted for articulated policy reasons).)

For all the foregoing reasons, UDOT is entitled to summary judgment on Bouck's retaliation claim.

**B.     Bouck's Disability Discrimination Claim**

Bouck asserts disability discrimination claims under both the Americans with Disabilities Act (ADA),[7] and the Rehabilitation Act of 1973 (the Act).[8]  He seeks monetary damages.  He does not seek injunctive relief.  The threshold issue is whether the court has subject matter jurisdiction (that is, whether Bouck's claim is barred by Eleventh Amendment sovereign immunity granted to the State).

---

[7]Bouck asserts a claim under 42 U.S.C. §§ 12112 and 12117(a).

[8]Bouck asserts a claim under Section 504 of the Act, codified at 29 U.S.C. § 794.

### 1. UDOT's Eleventh Amendment Defense

Bouck's disability claims under ADA Title I are barred by the Eleventh Amendment because he seeks monetary damages from an agency of the State of Utah. <u>Board of Trustees of University of Alabama v. Garrett</u>, 531 U.S. 356, 360, 374 n.9 (2001). Bouck concedes this point in his opposition brief. (<u>See</u> Pl.'s Mem. in Opp'n at 19-20.) But Bouck contends that the Rehabilitation Act provides a right of action against UDOT because UDOT receives federal funds and so has waived its Eleventh Amendment sovereign immunity.

The statutory text and case law support Bouck's position. <u>See</u> 42 U.S.C. § 2000d-7(a)(1) ("A state shall not be immune . . . from suit in Federal court for a violation of the Rehabilitation Act of 1973."); 29 U.S.C. § 794 (providing that "[n]o otherwise qualified individual in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."); <u>Brockman v. Wyoming Dep't of Family Servs.</u>, 342 F.3d 1159, 1167-68 (10th Cir. 2003) (stating that, "'by accepting federal financial assistance as specified in 42 U.S.C. § 2000d-7, states and state entities waive sovereign immunity from suit'" under Section 504) (quoting <u>Robinson v. Kansas</u>, 295 F.3d 1183, 1189-90 (10th Cir. 2002)). UDOT apparently concedes this point because UDOT, in its Reply Memorandum, does not address, much less challenge, Bouck's assertion. Instead, UDOT evaluates Bouck's disability claims on the merits under the Rehabilitation Act.

Accordingly, the court has subject matter jurisdiction over Bouck's disability claim as brought under the Rehabilitation Act, which is very similar, if not identical, to the ADA's provision barring employment discrimination on the basis of a disability.

### 2.     The Merits of Bouck's Disability Claims

Bouck asserts a claim against UDOT under Section 504 of the Rehabilitation Act, which reads in relevant part as follows:

> No otherwise qualified individual in the United States, as defined in section 705(2) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  "This statute makes available a private right of action to qualified individuals who have been subjected to employment discrimination by a program or activity receiving federal financial assistance."  Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 971 (10th Cir. 2002).  The Rehabilitation Act incorporates the standards of the ADA.  Id. at 969 (citing 29 U.S.C. § 794(d)).[9]  To establish a prima facie case of employment of discrimination under the Rehabilitation Act, Bouck must present evidence that he is disabled, that he is "otherwise qualified" to perform the essential functions of his job with UDOT, that UDOT receives federal financial assistance, and that UDOT discriminated against Bouck based on his disability.  MacKenzie v. City and County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005); Schrader, 296 F.3d at 971.

---

[9]Section 794(d) reads as follows:

The standards used to determine whether this section [Section 504] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.

Bouck claims that UDOT discriminated against him based on his disability by failing to accommodate his disability (a mental impairment) and then terminating his employment. Specifically, Bouck contends that UDOT should have transferred him out of the Structures Division to get him away from the supervisor with whom he could not work.  Bouck alternatively contends that UDOT should have extended his leave without pay for some period longer than the one year provided by the administrative rule in order to provide him an opportunity to recover and return to work.

UDOT contends that Bouck has not presented evidence that he is disabled, or that he is otherwise qualified to perform his job with or without reasonable accommodation.  UDOT notes that the first accommodation sought by Bouck demonstrates that he has no disability, and the second accommodation demonstrates that he is not a qualified individual.

a.      Bouck is not disabled.

Under the Act, an individual with a disability is one who "has a physical or mental impairment which substantially limits one or more of such person's major life activities."  29 U.S.C. § 705(20)(B)(i).  The question of whether Bouck is disabled is a question of law. Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d 1228, 1230 (10th Cir. 1999).  "To evaluate whether a claimant is disabled from working, we consider 'whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job.'" McGeshick v. Principi, 357 F.3d 1146, 1150 (10th Cir. 2004).

UDOT assumes for the sake of argument that Bouck has an impairment.  But UDOT asserts that, contrary to Bouck's claim, Bouck's impairment does not substantially limit the

13

major life activity of working.  UDOT further asserts that any other major life activity alleged by Bouck is not relevant because the accommodations Bouck requested are not related to the other claimed major life activities.

Bouck admits that a transfer to a different job under a different supervisor would have solved the problem.  This means he did not have an impairment which substantially limited one or more major life activities.   See McGeshick, 357 F.3d at 1149 ("A substantial limitation in a major life activity is having general restrictions on the performance of that activity in life as a whole, not merely restrictions on the ability to perform a specific job."); Nuzum v. Ozark Automotive Distributors, Inc., 432 F.3d 839, 848 (8th Cir. 2005) ("Ability to do another job of the same general class is inconsistent with a substantial limitation on the major life activity of working."); Siemon v. AT&T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997) ("The inability to perform a 'single particular job' because of a conflict with a supervisor does not constitute 'a substantial limitation in the major life activity of working.'").  Further, the "workplace accommodation [requested] must be related to the limitation that rendered the person disabled." Nuzum, 432 F.3d at 848.  Consequently, all of the other major life activities alleged by Bouck (for example, sleeping, eating, thinking, and interacting with others) are not relevant to the analysis because the only accommodations he requested address his ability to work.  In short, if a transfer would solve the problem and allow him to return to work, he has not suffered a disability because he has not been barred from a broad range of job opportunities but only the single job of working for the unfriendly supervisor.  And the other major life activities that had allegedly been impacted by his mental state would not need to be accommodated.

b.      Bouck is not a qualified individual.

Not only must Bouck be disabled in order to recover under the Act, but he must be a "qualified individual."  That is, he must be able, with or without reasonable accommodation, to perform the essential functions of his job.  Davidson v. America Online, Inc., 337 F.3d 1179, 1190 (10th Cir. 2003); Brockman, 342 F.3d at 1168.

Bouck admits that he could not work beginning in June 2003 (thus his claim for long-term disability benefits).  That admission is inconsistent with his assertion that he could have performed an essential function of his job (with or without a reasonable accommodation) at the time he stopped working or at the time UDOT terminated his employee status.  See Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1280 (11th Cir. 2005) ("Because the ADA reserves its protections for individuals still able to perform the essential functions of a job, albeit perhaps with reasonable accommodation, a plaintiff who is totally disabled and unable to work at all is precluded from suing for discrimination thereunder.")

And even assuming that by June 2003 (when he stopped working) or June 2004 (when his one-year leave expired) he could have worked with an accommodation, the accommodations he requested were unreasonable.  In order to be "qualified," a person must be able to satisfy all the conditions of employment with or without a reasonable accommodation.  Bouck's accommodation request for an extension of the long-term leave deadline was unreasonable.  Holding a person's job open for an indeterminate amount of time (after holding the job open for fourteen months) to see whether he may be able to return to work is not a reasonable

15

accommodation.[10]  And Bouck's request for a transfer or a change in the line of reporting (that is, his request for a new supervisor) is also unreasonable in the sense that it would only address a conflict with a particular supervisor rather than a substantial limitation on a major life activity (as noted above).

Bouck was not a qualified individual with a disability and UDOT had no obligation to accommodate him.  Accordingly, UDOT is entitled to summary judgment on Bouck's Rehabilitation Act disability discrimination claim.

**ORDER**

For the foregoing reasons, UDOT is entitled to summary judgment.  Accordingly, UDOT's Motion for Summary Judgment is GRANTED.  UDOT's Motion to Strike the Affidavit of Saiid Jirsa is DENIED AS MOOT.

DATED this 28th day of August, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge

---

[10]Arguably, Bouck's request for an extension of the long-term leave deadline is not so much a request for accommodation as it is a request for reprieve from the requirement that Bouck work to maintain his job status.